Microsoft Office Word Document MSWordDoc Word.Document.8 Microsoft Office Word Document MSWordDoc Word.Document.8 Whenever you're ready. Is it Mr. Shee? Yes. May it please the Court. My name is Daniel Shee, appearing on behalf of Allvoice, which thanks the Court for hearing the case today. I'll start with the issue of the District Court's grant of summary judgment of non-infringement based on supposed absence of linked data. The District Court refused to consider the technical and expert evidence showing how... Before you get to that, you raised a claim construction or two claim construction issues about linked data. What impact do those constructions have on the result here? I was not clear about that. Your Honor, we believe it impacts the reason for needing to amend the contentions. I can certainly understand that the Court could decide the case without reaching the linked data issue, the construction issue, excuse me. However, that could be then a cause for another... In the interest of judicial efficiency, we think it makes sense to address it simply because it could be dispositive below again. It is possible to decide the case without resolving that. So your view is that the infringement question with respect to the linked data issue turns entirely on whether the original infringement contentions, one, included the TSF property store, and two, whether it was an abuse of discretion to preclude you from amending. Correct, your Honor. And a decision that either of those was error would be separate independent grounds for reversal. And in addition to that, just to get straight what's at stake here and what the issues are, and then you've got the separate issue of the 101 on claims 60 to 68. Among others. There's also the issue of construction of audio identifiers. But we don't have to address the audio identifiers question if we were to rule against you on the linked data question, right? That is true. I hope it doesn't go that way, but yes, your Honor. So addressing the first ground of issue here that the district court precluded Allvoice from relying on data in the property store, that was an immensely consequential decision, acting as effectively as a case-killing sanction. And let me be clear on two things here. First, this case does not involve some new infringement theory presented on summary judgment that was contrary to what had been in the infringement contentions. All of the cases that Microsoft presents and relies on and uses to import hyperbole characterizations of shifting stands and vexatious shuffling and the like, all of those cases involved brand new theories presented that were not in the contentions, that were contrary and often, in some cases, completely the flip of what had been offered before. But there was no reference in the original infringement contentions to the TSF property store except to the extent that you contend that it was referenced in these documents that were cited here. It absolutely was referenced in the documents cited, your Honor. I understand your contention. But apart from the documents, it wasn't referenced in the original infringement contentions. Well, to be clear, the element at issue was not linked data per se. It was the element of the method step of using the interface application program to form linked data. And the contentions pointed to what that step was, which was an act of associating two pieces of data, namely character position, position of the words, excuse me, and the audio, where the audio was. Let me try to be clear about this. Let's, for the moment, ignore the references to the documents. Let's say they weren't included in the original infringement contentions. Do you agree that with that exclusion that the original infringement contention was inadequate? No. No. Why not? Well, first of all, we could find no precedent, and certainly Micah's side's none, where a perceived lack of specificity in the infringement contentions warranted summary judgment. Yeah, but I'm not talking about the leave to amend. I'm just talking about the question of whether the original infringement contentions themselves were inadequate without amendment. And you're saying that the fact that the PSF property store was left out there is not a ground for summary judgment? How so? It's not in this case because there is nothing in the record suggesting that anything other than that property store information was what was being talked about. There is nothing here that provides a basis for confusion between that and something else as what was being accused. But you did have infringement contentions. So you did say that there were other grounds for infringement, but they turned on your claim construction argument, correct? I'm not sure I understand your question. I mean, you didn't just submit infringement contentions that says, well, nothing, no part of this infringes. You did say there were specific aspects that you claimed infringed, but you were claiming they infringed under what, an alternative claim construction? No, Your Honor. We alleged that the step of associating two pieces of information was what satisfied the method step of forming linked data. And now the documents cited in the contentions explain where that association – what kind of data it creates. It creates data in the property store of the tax services framework. I'm a little confused now. My understanding is that you did not identify the property store in your infringement contentions as satisfying linked data elements. Am I right about that? We didn't expressly use those words. However, we pointed to – Well, I didn't use any particular words. The question is, did you identify the property store in your infringement contentions as satisfying linked data elements? Yes, Your Honor, and here's how. We identified the step that satisfied the requirement of forming linked data. And that was the act of associating the character – the word locations with the audio stream information. The contentions are a technical document. They have to be read with some technical background. And certainly with the document we cited, that was essentially a theory of operation of the accused functionality. And the only place in that document talking about any associating step at all in that document is about using the TSF properties. They're referred to as Cicero, but everyone understands that that's a code name for TSF. It uses those Cicero properties to create – to make that association. So that is clear and there's no area for confusion. But that seems to be kind of reading out the local rules. You're saying that as long as the functionality was described, you don't have to describe the actual place in memory where this happens. I mean, that seems to me to be a construction of local rules, which makes them largely meaningless. No, Your Honor. The local rules – I mean, the issue of specificity can be enforced by requiring more specificity. Microsoft never moved to require that there be more specificity in there. And that is proof positive that they had what they needed for purposes of discovery and claim construction, that they needed nothing more. Moreover, the information was in there. They've never been able to point. And we asked at the district court level and in the briefs here, where's the confusion? What other act of associating could we have been talking about? We might agree with you that if the district court found your infringements to be adequate under the district court's own interpretation of the rules, that we wouldn't find an abuse of discretion. But what you're asking us to do is to say we have to find an abuse of discretion when the district court found it not adequate. Actually, I think the posture benefits us, and here's why. To the extent the district court was trying to impose a sanction for insufficient specificity, it didn't do what it required to do. I agree, Your Honor, because it didn't find bad faith or anything else or any other profession. So what the district court was essentially doing was limiting the evidence that it was going to consider on summary judgment to what was in the infringement contentions. That has to be viewed in the light most favorable to the non-moving party, us. And those infringement contentions included the citations to the evidence that we rely on that clearly show the property stores being used for that associating act. So given the posture of this case on summary judgment, that requires a finding of error. But this was all easily avoidable, correct, with timely amendments? Yes, Your Honor. The reason we're here would have gone away if you had timely filed amendments. Yes, Your Honor, and that's the alternative ground that we noted. Is there anything other than you're saying it took 66 hours or whatever for the source code? Is there any other reason you can give us for the delay in filing an amendment? Well, we disagree that there was a delay. But let me explain. The district court was wrong to say that we didn't make a showing of diligence. We did. There may have been some confusion below because the local rules didn't help. That's what I'm asking you about. Anything else to show a reasonable diligence? I think in your briefing you cited the fact that it was 66 hours of coding. I'm wondering what else there was in the record to show that you acted diligently. Yes, Your Honor. In our motion for leave to amend, we pointed out several things. We discussed them under meeting the prong of timeliness, which we think is essentially equivalent to the diligence issue, but the court may have overlooked it because we refer to it as timeliness. But we pointed out that our motion came when there was 10 months left of discovery, when expert reports weren't due for more than a year, and most importantly— That's not your diligence. No. The question is how were you diligent? We were diligent because the motion for leave to amend came a reasonable time after claim construction, and as we pointed out, after efforts to meet and confer, and I do want to point out— How did the claim construction cause you a problem identifying the property store as the source of the link date? What the claim construction did was import limitations from the preferred embodiment. We did not change what we were accusing of satisfying the express elements of a claim, but what we sought to do in the amendment was to point out how those newly imported elements were satisfied by what we were already accusing. We wanted to add that into the infringement contentions to satisfy any issue. That doesn't seem too onerous. Doesn't seem too onerous? A task. It is not too onerous a task. In the context of—one has to keep in mind, when evaluating diligence, it has to be relative to what the demands of the case are. Here, the parties had agreed to stay all discovery and all deadlines pending an amendment and summary judgment. There had been no action by either party that would have prejudiced itself, I guess, during that time frame. That time frame was spent preparing amended contentions, meeting and conferring, which we do have to clarify the record here. Microsoft misstates that they never received the proposed amendments before the motion. That's just not true. What was the operative event that caused you to have this eureka moment that you had to identify the TSF property store? I believe that's mischaracterizing it, Your Honor. There was no eureka moment about having to identify the property store. That had been identified. We talked about the associating step. Nothing else in that theory of operation document that we pointed to talked about any associating other than with the TSF property store. That was already disclosed. What prompted discussing— It was already disclosed. Why did you include the infringement contentions in the first place? Because the court's claim construction imported a requirement for embodiment that the information be stored in the memory of the interface application. You knew that that was a claim construction that Microsoft was arguing for all the way back in 2010, right? Yes, Your Honor. And you knew before the Markman hearing that that was the argument that was going to be presented to the court, right? Sure. So why didn't you amend your infringement contentions on the possibility that Microsoft would prevail on that claim construction argument and make it clear that you had an alternative basis to claim infringement? Several reasons, Your Honor. First, there is no case that requires that. Second, the local rules contemplate that a construction different from the one you proposed could be good cause for amending. And I do want to note, too, that this case had been transferred from another district that didn't even— that allowed amendment as a right after claim construction. But most importantly, that information was in the cited documents. The cited documents say where the information is created, namely in the property store. Now, we imported that into the contentions after the claim construction. Sorry, Your Honor. I'm sorry. I have one of those documents that ends 4110. Where does this tell you? I have one of the documents that was cited in your original infringement contention, the one that ends in 4041, let's say. Where in that document does it identify the TSO property store? 4041. Let me back up on that. My problem is you say in your brief that these documents identify the property store. You don't quote from the documents to show us that that is the case. Where do those documents say that the property store is the place that the link data is stored in? It's in the record at A4365, which I'm pretty sure we put it, but in any event, it's— What page? A4365. And we do quote it at page 16 of our opening brief, Your Honor. I'm seeing over time— Where do I find it on this page? Okay, under properties, one of the last sections there. And I'll note earlier on the page, it refers to Cicero and explains that Cicero is a synonym here for a text services framework. But under properties, it states, Cicero provides properties that associate metadata with a range of text. The speech tip uses a property, referring to those properties of Cicero, to associate an abstract pointer to the recognition data with each dictated word. That's the only act of associating in this document, the theory of operation of this accused functionality. And that is—we were talking about the act of associating in our contention. So this—no one has—there's no evidence, there's no expert opinion that there's any confusion here, that there's any act of associating other than this one. Well, it seems to me what you're saying is that it was perfectly clear to you and everybody else that the PSF property store was the place in memory that the link data was stored, and yet you didn't say that in the infringement contentions, and you say it wouldn't have been obvious to do that until later. And I'm not understanding how to square those two. The method step called for the formation of link data. We pointed out where that happens. Where the formation happens is in the code of associate, the act of associating. If more specificity was desired, it could have been asked for. I will point out that Microsoft's non-infringement contentions suggested—indicated, stated no lacking of specificity. What your argument comes down to at the end is that the district court required you to be too specific, right? The district court called for specificity on an issue that had never been identified as something where there was lacking specificity, where Microsoft had never indicated that it needed more information, where Microsoft formed claim construction positions that reflected an understanding of what the link data was. They made their argument about it having to be stored in interface application memory as to lay the groundwork for the argument about this. So there was no place here that there was any actual issue of confusion here. It's totally a gotcha argument on summary judgment. They got the benefit of disclosure for purposes of everything they needed, but then on summary judgment convinced the district court that somehow specificity wasn't there and that not only that—not that specificity had to be added, but that somehow that warranted summary judgment and that was wrong. Thank you, Your Honor. Thank you. Good morning. May it please the Court. My name is David Lender from the law firm of Weill, Gottschall & Manges, representing the appellee Microsoft. Although there are several issues raised in the briefs on appeal, I think the discussion that was with my colleague here is really the fundamental issue because at the end of the day that issue is a case dispositive issue, whether the district court abused its discretion in enforcing its local rules and disallowing Allboys from adding the TSF property store to the required link data. I don't have to decide the one-on-one issue, Your Honor. Your Honor, actually you do not, and the reason why is— The district court's invalidated the claim. Yes, Your Honor, but the required link data is in every single claim. I mean, if we were to affirm, we would be affirming in part as invalidation of those claims, so I don't see how we can avoid that issue. Your Honor, if you were to find that the court, which we believe you should, found that the court did not abuse its discretion in disallowing the TSF property store, you can affirm the summary judgment filing on all of the asserted claims. That's the only point I was making. Was your one-on-one argument raised only as a defense, or was it raised as a counterclaim? It was raised as an affirmative defense, and then it was brought on summary judgment as well, the one-on-one issue. So it was not a counterclaim? So if there's a finding of non-defense, the one-on-one issue falls? You're correct, Your Honor. It was brought as an affirmative defense, the one-on-one issue, and then we brought a summary judgment motion on the one-on-one issue to invalidate Claim 6068. My point is I understand Judge Dyke's question, which is there's a finding of invalidity on one-on-one. Do I have to still deal with that issue? Because even if there's a finding of no infringement, we still have a finding of invalidity. I was making the point simply that the summary judgment can be affirmed solely on the issue, of the linked data issue, because that linked data is required in every single claim. That was the only point I was making. I understand your point. Obviously, then we'd still have the issue of are these claims valid or not. So I was just making the point simply that the linked data issue is a basis to affirm summary judgment on every asserted claim. And I guess now I've gotten confused. So you're seeking an affirmance of the non-infringement of every single claim?  And what with regard to the non-infringement? Well, I mean, I guess the question, Your Honor, is if you affirm on the issue of non-infringement, then the question is simply do you need to reach the validity issue as well, right? Obviously, it's part of the appeal, so I think you do need to reach the validity issue because it's – Well, not if it was just an affirmative defense. Not if it was just an affirmative defense. That's right. So you're not sure if it was just an affirmative defense? No, I'm sure it was just an affirmative defense. The one-on-one was just an affirmative defense. We did not bring a counterclaim on the one-on-one issue. Yes, Your Honor.  Okay, so I'm sorry to start off with a bit of confusion, but that's what we – And the judge made findings of non-infringement of the Claims 16 and 68. So that's the issue, Your Honor. In the claim construction that is not being appealed by all voice, the district court found that Claims 60 through 68 also required linked data. This was the term output means and means for determining the positions of character words. Both of those claim terms, the court construed as requiring linked data as well. So the same issue of the lack of diligence in adding the TSF property store to the linked data would apply to those claims as well. So we could vacate the invalidity finding as moot and affirm summary judgment on non-infringement across the board? Is that what you're saying? Yes, Your Honor, that's what I'm saying. So how did these documents that your friend on the other side referred you to not put you on notice of what it was they were really talking about? So, Your Honor, let's just sort of sit back and where we are. The original infringement contentions, which you can find at A3538, never, ever called out the TSF property store. In fact, if you look at that document, what you'll see is that they actually identified multiple different applications that they claimed formed the linked data. So if you look at A538, what you'll see is they accused, they said that the SAPI server which forms linked data includes TSF, SAPI server, related client APIs, and another application, SPSRANG.DLL. Nowhere do you see the TSF property store. They identified four different applications, and if you include the client API, there's actually multiple applications included within that. So there's absolutely no question that the TSF property store is not identified in the operative infringement contentions. So therefore, what they would have you say is, well, they cited a bunch of technical documents, and somewhere within those technical documents, we should have known that what they were actually accusing was the TSF property store. But if you look at the page that they actually cited, A4365, which you were looking at the technical document a moment ago, there's actually, again, no reference to the TSF property store. The actual application that's referenced there is even another application, the speech tip. And if you look at the court's, the district court's decision, the district court actually said, I reviewed those documents and didn't see the TSF property store. So nowhere, nowhere in the infringement contentions did they identify the TSF property store. And in fact, in the documents, they don't call out the TSF property store. Yet we were supposed to know and figure out based on that disclosure that it was the TSF property store that was at issue. But the local rules are very clear. The local rules 120C requires the claim chart to identify specifically where each element of each asserted claim is found within each accused device. And they just didn't do it. And we, in fact, and there's no question that the TSF property store is all they are accusing now of including the accused link data. We took their expert's deposition. He admitted it. That's at A4002. They admitted it in the oral argument as well. So unless the court is going to find that there was an abuse of discretion in failing to allow them to add the TSF property store, they cannot prove infringement here. And, Your Honor, we talked a lot about diligence, and Chief Just Post mentioned the 66 hours of source code review. That source code review had nothing to do with the motion to amend to add the TSF property store. That was a second motion to amend that they tried a second time to add the DOE. In the actual motion to amend the infringement contentions to add the TSF property store, there was absolutely no showing of diligence. Absolutely none whatsoever. They did not even try to make a showing of diligence because they took the position that they didn't need to show diligence. So there was absolutely no finding. If you look at the motion that they actually filed to amend. And they took the position that they didn't need to show diligence because? Their argument was that even though the rule says you need to timely file a motion to amend, and the rule says that one of the grounds that may support an amendment is a new claim construction, they took the position that may was shall. So that even though the rule said timely and may says may, they took the position that if there's a new claim construction, they have the right no matter what. And the court said no. You need to prove diligence. Well, you have the right. And there are two separate questions. One is they have the right. I mean, I think they have the right to file an amended complaint. Absolutely. It's simply a matter of whether or not they find the file doesn't timely matter. Correct. That's absolutely right. And if you look at the motion which is actually included within the record. What page? Yes. The plaintiff's motion to amend is at A3186. And if you look at A3186, it's a very short motion. Absolutely no findings, no evidence whatsoever of diligence. Do I understand correctly that the Western District of Washington looks to the Northern District of California's interpretation of its own rules for purposes of informing its interpretation of its rules? Yes, Your Honor. It was adopted. It was basically adopted from the Northern District of California rules. Yes. And under the Northern District, it's very precise that the mere fact that you might be surprised by a court's claim construction is not enough to justify on its own. That's right, Your Honor. If you look at OT micro, which obviously this court construed the Northern District of California rules, absolutely clear that it's a two-step. At the end of the day, it's really a two-step process. You need to show diligence. And if you get over the hurdle of diligence, then you have the prejudice factor. Here, the court found there was just no diligence. They never got to the second factor, just like the court did in O2 micro. And the reason why is very simple. They put in no evidence of diligence. They just absolutely didn't. They didn't try to. They put no evidence in. They made no argument in their briefs. Zipped, nothing. And so, therefore, the court found without showing, why did you wait three months until after the Markman to file your motion? Why did you wait 19 months until after they got our claim construction, proposed claim constructions, where we laid out linked data, what we meant and what we believed it meant, and the court adopted it. Nothing, no diligence, zero. And that's why it was very easy for the court to say, you violated our local rules. You didn't meet it. You didn't show why it was timely and, therefore, disallowed the amendment. Simple. So we think, Your Honor, this is an abuse of discretion standard. And given their failure to meet their burden, if it's their burden to prove diligence, we don't think there was an abuse of discretion. And, therefore, we think it clearly should affirm. Your Honor, obviously, I have five minutes to go. There are several additional issues that are on appeal. I don't know if there was any that were of particular interest to the court. Otherwise, we obviously would stand on our papers, papers given the heightened standard here. Great. Thank you, Your Honor. Can I just ask you on that? No, come on. No, I'm sorry. Your friend raised with regard to the status of the 101 in validity contention. So I assume you don't have an issue, hypothetically, if we were to agree on the infringement, that since there's no counterclaim, those claims go down on non-infringement but not on invalidity. Your Honor, their answer and counterclaim, they did assert counterclaims. The record doesn't have a full version of their answer. So I can't confirm right now whether they did a counterclaim on it. The motion for summary judgment was just for non-infringement. Yes. Well, yes, Your Honor. Okay. But there had been a prior. As well, the motion for summary judgment of non-infringement covered all claims, including the 608. It only covered the claims that were then asserted that were still live. So there had been a prior motion for summary judgment much earlier in the case. But I think I understand where Your Honors are going. I mean, we do agree that linked data is in those claims. So I think if the court goes that route, vacating the 101 issues, it should resolve that. Okay. But I do want to respond here to the idea that no showing of diligence made zero zip as he characterized it. That's just not true. A showing of timeliness was made, and that is the terminology used in the local rules and why we used it. And that timeliness, there was nothing categorical about the time that had passed, what they call three months, that reflected lack of timeliness. We showed why it was timely. We showed that the parties had agreed to stay any issues so that there was nothing prompting any more urgency than that time frame. We showed that we had met and conferred during that time. The court had no basis on which to claim, in light of all that, that it was somehow untimely when there was so much time left in the schedule. If you're saying that timeliness is weighed or assessed based on whether or not there's prejudice to the other side, what criteria does one use for whether something is timely or untimely? Well, here, because there was no express time set by the rules, timeliness has to be a reasonableness sort of consideration, and that has to take into account the circumstances, which is that the parties agreed, we're going to do this right, we're going to not have discovery and deadlines during this time while you're amending and while the summary judgment is pending. There were 15 months before Microsoft's rebuttal report on non-infringement was going to be due, so there was just nothing requiring, say, an amendment within a week or two weeks or whatever it was. It wasn't clear what standard the district court was using to judge timeliness or diligence there, and if it was going to require an accounting of the time, how every day or every week was spent, that's a requirement that was not stated in the rules and that we never had an opportunity to do if that's what the court wanted. Just to clarify, Microsoft characterized TSF and other things as multiple applications. There's no record support for that. The only thing in the record discussing the differences between these things calls them different programming interfaces, and so that's different modules of a program. Nothing calls them separate applications, and their claim that the TSF property store was not disclosed in that is baffling because the TSF property store is the memory of the tech services framework, which is the very first thing identified as the interface application program. Thank you. We thank both counsel and the cases.